[Crim. No. 9947.   Second Dist., Div. Four.   June 2, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. CORNELIUS L. WITT, Defendant and Appellant.

Gould & Aronson and Sylvan B. Aronson for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—This appeal is from a judgment following a court trial in which defendant was convicted of conspiracy to commit grand theft (Pen. Code, § 182) and two counts of grand theft (Pen. Code, §§ 484, 487). The case arises out of defendant's conduct as president of Pacific Trust Deed Association. The indictment upon which defendant was tried is the same one as in *People* v. *Collins* (2 CR 9560) *ante,* p. 626 [51 Cal.Rptr. 604]. Reference to the opinion in that case will disclose the factual background.

The indictment originally contained 16 counts. Count I charged the defendants Collins, Witt, Barr and Kersting with conspiracy to commit grand theft. The other 15 counts charged one or more of the defendants with grand theft. All pleaded not guilty and were tried before a jury. Barr and Kersting were acquitted. Witt and Collins were acquitted on certain counts and the jury failed to agree on others. Thereafter, on March 28, 1963, Witt pleaded guilty to counts I and XVI. On June 6, 1963, Collins was brought to trial on seven counts and convicted on all of them. Witt then changed attorneys and the court granted him leave to withdraw his plea of guilty. A jury was waived and it was agreed that the case would be submitted to the court upon (1) the grand jury transcript, (2) certain portions of the Collins trial record (including all exhibits) and (3) evidence to be offered on behalf of the defendant. Upon the completion of the trial the court found Witt guilty on counts I, XV and XVI.[1] Witt was sentenced to state prison, execution was suspended, and he was placed on probation for 10 years.

The defense offered by Witt was, in substance, that he relied on subordinates who assured him that trust deeds were being assigned as money was withdrawn from the trust accounts, and that although he knew the company records were not up to date he had believed the company to be solvent to and including November 18, 1960, the day it ceased business.

Defendant's sole contention in this court is that the evidence is insufficient to support the judgment. His argument is

---

[1]The clerk's minutes for January 15, 1964, are erroneous in listing the counts on which defendant was found guilty. But the judgment correctly reflects what the court actually found, as shown by the reporter's transcript. Defendant does not contend that the judgment is erroneous in this respect.

no more than a request to this court to reweigh the evidence, to believe testimony which the trial court disbelieved, and to reject inferences which the trial court drew from the evidence. No reference to authority is necessary other than the oft-repeated rule that this court must assume in favor of the judgment the existence of every fact which the trier of the fact could reasonably have deduced from the evidence. (*People* v. *Daugherty*, 40 Cal.2d 876, 885 [256 P.2d 911].)

Count I, upon which defendant was convicted, is the conspiracy count. It is conceded that Witt was one of the two founders and equal owners of the company, and its president at all times. The trial court was not required to believe that Witt was ignorant of what Collins and the company employees were doing. Witt's involvement is more readily proved than that of Collins, for Witt's signature, as president, appears on a great many documents. It is reasonable to infer that Witt knew that investors were being induced to part with their money by means of advertisements containing statements which he knew to be false. It is also a reasonable inference that Witt knew that money was being regularly withdrawn from the trust accounts for his company's own purposes, in breach of the terms of the trusts. It seems hardly possible that the diversion of more than $400,000 in trust funds, during a period of only 10 months, could have escaped the president's notice. Witt admitted having seen the letter sent by the State Division of Real Estate on October 19, 1960, calling attention to a number of instances in which the state investigators had found that trust funds were being withdrawn without any trust deeds being assigned in return. Nevertheless the misappropriations continued until the company closed its doors a month later. Witt's participation in a conspiracy with Collins to take money by false pretenses and to embezzle trust funds is adequately proven.

Count XV charges a theft of $3,000 from Mr. Hendershot, who had deposited that sum in an escrow account. Upon the promise that he would receive a trust deed, Mr. Hendershot authorized the release of the money and on November 17 (the day before the company closed) a check from the escrow account was issued to the order of Pacific. Witt caused the check to be deposited in his personal account and then used the funds to pay a note which he owed to the California Bank. No trust deed was issued to Mr. Hendershot. In the light of the whole record the trial court was not required to believe defendant's story that he thought a trust deed had been

transferred to Hendershot. It is of course immaterial here whether the note was Pacific's obligation (as Witt claims) or had been incurred for some other reason.

■ Count XVI charges a theft on November 18, 1960, of $3,000 in money, the property of Pacific Trust Deed Association, Incorporated. The evidence shows that an investor named Cross gave Pacific $2,891.37, to be used in purchasing a trust deed for him through an escrow. This check was deposited in Pacific's trust account in the California Bank on November 10, 1960, bringing the balance in that bank account to $3,724.62. Between that date and November 18 there were small withdrawals from that account, reducing the balance to $3,031.10. On November 18 Witt prepared a check on that account payable to himself for $3,000. This was used to purchase a cashier's check which he turned over to an organization called Contractors Equity Exchange, which had been hired by Pacific to do certain accounting and other office work. The reason for this transaction, as explained in the testimony of Mr. Jones, one of the employees of Contractors Equity, was that during the noon hour it had been decided to pay off all of the employees that evening, and money was being transferred to the latter company for that purpose.

The evidence shows that money belonging to Pacific, as trustee, was misappropriated to pay the debts of Pacific and its affiliate company. The ultimate victim was Mr. Cross, who never received any trust deed. The evidence is sufficient.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.